UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                              )
ROMELLA ARNOLD,               )
                              )
        Plaintiff,            )
                              )
        v.                    )    Civil Action No. 09-964 (RWR)
                              )
KEN SALAZAR,                  )
                              )
        Defendant.            )
_____ )

<u>MEMORANDUM OPINION</u>

Plaintiff Romella Arnold, an African-American employee of the United States Department of the Interior ("DOI"), brings suit against the Secretary of the DOI ("Secretary") alleging that the Secretary failed to promote her in retaliation for her prior EEO activity, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e <u>et seq.</u>  At the close of discovery, the Secretary moved for summary judgment.  Because Arnold failed to exhaust her administrative remedies and establish a prima facie case that the Secretary retaliated against her by failing to select her for acting supervisor positions, and because Arnold has not rebutted the non-retaliatory reason the Secretary proffered for not promoting her to the Program Manager position for which she applied, the Secretary's motion for summary judgment will be granted.

## BACKGROUND

Arnold is an African-American woman who has been employed by the DOI since 1973 when she joined the department as a co-op student. Compl. ¶ 2; Def.'s Mot. for Summ. J. ("Def.'s Mot."), Romella Arnold Dep. ("Arnold Dep.") at 6:6-9. In 1975, Arnold became a full-time Equal Employment Opportunity ("EEO") Specialist in the Office of the Secretary. Arnold Dep. at 6:6-10; Def.'s Mem. of P. & A. ("Def's Mem.") at 1. In 1997, Arnold was reassigned to the DOI's Bureau of Land Management ("BLM") where she worked as an EEO Specialist. Arnold Dep. at 14:17-15:1; Def.'s Mem. at 2. The next year, Arnold became a GS-13 National Student Employment Program Manager. Compl. ¶ 5; Def.'s Mem. at 2; Arnold Dep. at 14:17-15:4. In 2001, Arnold was detailed to a temporary, 120-day promotion to a GS-14 Program Manager of the Diversity Intern Program and Historically Black Colleges and Universities (HBCU) program. In 2002, after her successor's 120-day detail ended, Arnold resumed the Diversity Intern Program and HBCU Program Manager position, although not on another GS-14 detail, and continued to fulfill her duties as National Student Employment Program Manager. Def.'s Mem. at 3; Arnold Dep. at 20:5-20.

In 2002, Marilyn Johnson was hired as the Assistant Director for Human Resources for the BLM. In this capacity, Johnson served as Arnold's second-level supervisor. Def.'s Mot., Ex. 17,

Marilyn Johnson Interview at 4:21-5:11. According to Arnold, Johnson created a hostile work environment, discriminated against Arnold by making false accusations about her, and demoted Arnold from her position as National Student Employment Program Manager in August 2003. Compl. ¶ 7. Johnson appointed Michael Brown to replace Arnold and reassigned Arnold to a GS-13 Title VI EEO Specialist position. Def.'s Mot., Ex. 4, Pl.'s Answers & Objections to Def.'s 1st Set of Interrogs. & Reqs. for Produc. of Docs. at 7. In early August 2003, Arnold made initial contact with an EEO counselor concerning her reassignment to the Title VI position and alleging that Johnson discriminated and retaliated against her, and that Johnson created a hostile work environment. Compl. ¶ 7; Def.'s Mot., Stmt. of Material Facts ("Def.'s Stmt.") ¶ 1.

In 2004, Brown was removed from the Program Manager position and Sylvia Felder was temporarily assigned as Acting Program Manager. Compl. ¶ 7; Def.'s Stmt. ¶ 8. In 2005, the DOI posted a vacancy announcement (WO Merit 2005-0135) for the Program Manager position (GS-0340-14) "in the Office of the Chief, Human Capital Management, Project Director, Special Initiatives Group." Def.'s Stmt. ¶ 5. According to the position description, the Program Manager position has "supervisory and management responsibilities," but the "position does not require technical competence in a specialized function area of Human Resources

Management[.]" Def.'s Mot., Ex. 8, Romella Arnold Report of Investigation ("Arnold ROI") at 195; Def.'s Stmt. ¶ 7. The vacancy announcement "advised applicants that their applications would be scored using an automated on-line system which included self-assessment questions, the answers to which would be used in determining the applicants' qualifications for the position[.]" Def.'s Stmt. ¶ 10. Twelve people applied for the position, including Arnold, Felder, and Brown, and ten received ranking scores.[1] Def.'s Stmt. ¶ 11; Def.'s Mot., Ex. 19, Decl. of Philesa A. Spencer ("Spencer Decl.") ¶ 9 & Ex. S3. Based on the applicants' responses to the self-assessment questions, the computer generated the following scores:

| | |
|---|---|
| 100.00 | Michael Brown |
| 100.00 | C.D. |
| 98.24 | S.V. |
| 98.24 | Sylvia Felder |
| 93.82 | S.S. |
| 93.82 | C.A. |
| 92.94 | Romella Arnold |
| 92.06 | E.C. |
| 88.53 | J.C. |
| 86.76 | R.S. |

Def.'s Stmt. ¶ 11.

Philesa Spencer was the Human Resources Specialist responsible for processing the vacancy. Id. ¶ 12. Robert Renton, Johnson's assistant, was the selecting official for the position. Id.; Compl. ¶ 10. Spencer told Renton the number of

---

[1] Two applicants were "screened-out" and not assigned scores. See Def.'s Mot., Ex. 19, Decl. of Philesa A. Spencer ¶ 9 & Ex. S3.

applicants but not their identities and Renton asked Spencer to send him the top candidates. Def.'s Stmt. ¶¶ 13-15. Spencer selected candidates with scores over 95; the four candidates, who did not include Arnold, were referred for further consideration. Id. ¶¶ 15, 17. A panel interviewed the four candidates and recommended that Renton hire Brown. Id. ¶ 18. Felder was the panel's 4th choice. Id. Nevertheless, Felder was selected for the position in June 2005. Id. ¶ 19; Def.'s Mot., Ex. 16, Hr'g Exs. (Volume 3) at 13.

Arnold made initial contact with an EEO counselor on May 23, 2005 claiming that the DOI retaliated against for filing her 2003 EEO complaint by (1) "fail[ing] to provide [her] with the opportunity to serve in Acting Supervisory positions as such positions became available in the Human Resources office," and (2) "fail[ing] to consider [her] prior work experience, knowledge, and skills among the best-qualified candidates" for the Program Manager position. Arnold ROI at 9-10. "On July 18, 2005, Arnold amended her complaint to add a claim of reprisal due to her non-selection for the [Program Manager] position." Def.'s Stmt. ¶ 20. Arnold filed her one-count complaint alleging retaliation for filing her 2003 EEO complaint in May 2009.

The Secretary moves for summary judgment. With respect to Arnold's claim that she was retaliated against by not being selected for acting supervisor positions, the Secretary argues

that Arnold failed to exhaust her administrative remedies, and, even if she had, that Arnold cannot establish a prima facie case of retaliation for all of the non-selections. The Secretary also argues that Arnold failed to rebut the legitimate, non-retaliatory reason for not promoting Arnold to the Program Manager position. Arnold opposes.

<u>DISCUSSION</u>

Summary judgment is properly granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 259 (1986) ("[A] summary judgment motion will be defeated if sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial, and that a plaintiff may not, in defending against a motion for summary judgment, rest on mere allegations or denials of his pleadings." (citation omitted) (internal quotation marks omitted)). "A genuine issue is present in a case where the 'evidence is such that a reasonable jury could return a verdict for the non-moving party,' a situation separate and distinct from a case where the evidence is 'so one-sided that one party must prevail as a matter of law.'" <u>Dozier-Nix v. District of Columbia</u>, 851 F. Supp. 2d 163, 166 (D.D.C. 2012) (quoting <u>Anderson</u>, 477 U.S. at 248). "'In

considering a motion for summary judgment, a court is to draw all justifiable inferences from the evidence in favor of the nonmovant.'" Hairston v. Boardman, 915 F. Supp. 2d 155, 159 (D.D.C. 2013) (internal quotation marks omitted) (quoting Fields v. Geithner, 840 F. Supp. 2d 128, 133 (D.D.C. 2012)).

Federal employers are prohibited from discriminating against an employee because the employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a); 42 U.S.C. § 2000e-16 (applying § 2000e-3(a) to federal employers); see also Rochon v. Gonzales, 438 F.3d 1211, 1216 (D.C. Cir. 2006).

I. NON-SELECTION FOR ACTING SUPERVISOR POSITIONS

Arnold alleges that the Secretary retaliated against her for bringing her 2003 EEO complaint by not selecting her for acting supervisor positions. Compl. ¶¶ 7, 15. Arnold claims that on eighteen occasions in 2002 to 2005, Def.'s Mot., Ex. 5, Pl.'s Answers to Interrogs. & Resps. to Req. for Prod. of Docs. ("Arnold Interrogs.") at 8-11, "[o]ther employees in the [Office of Human Resources] were permitted to act in supervisory positions" when Johnson or other supervisors were out of the office but Arnold was never permitted to act in such a position, Compl. ¶ 7. The Secretary argues that he is entitled to judgment as a matter of law on these claims because Arnold failed to

timely exhaust her administrative remedies for the acting
supervisor positions assigned in 2003 to 2005 and cannot
establish a prima facie case of retaliation for the acting
supervisor position assigned in 2002.  Def.'s Mem. at 13-16.

Title VII "[c]omplainants must timely exhaust the[ir]
administrative remedies before bringing their claims to court."
Bowden v. United States, 106 F.3d 433, 437 (D.C. Cir. 1997).
Specifically, a plaintiff must initiate informal contact with an
EEO counselor within 45 days of when the alleged discriminatory
conduct occurred.  42 U.S.C. § 2000e-16(c); 29 C.F.R.
§ 1614.105(a)(1).  Arnold received e-mails from September 6, 2002
to February 7, 2005 announcing that others had been designated to
act as supervisors.  Arnold Interrogs. at 8-11; see also Def.'s
Mem. at 13-14.  However, in her 2003 EEO complaint, Arnold did
not make any allegations that she was discriminated against by
DOI failing to appoint her to acting supervisory positions.  See
Def.'s Stmt. ¶ 1.  Instead, Arnold did not initiate contact with
an EEO counselor and raise her claim of retaliation due to
failure to appoint her to acting supervisory positions until
May 23, 2005.  Thus, the Secretary argues that all of Arnold's
claims about non-selections that occurred before April 8, 2005 --
45 days before Arnold contacted an EEO counselor on May 23, 2005
and raised these claims -- are time-barred.  Arnold does not
claim that she timely initiated contact with an EEO counselor for

non-selection for each position. Instead, she argues that, under the continuing violations theory, all of her claims were timely exhausted because the Secretary's actions were part of a continuing pattern of ongoing retaliation that culminated with Arnold's non-selection for the Program Manager position in June 2005. Pl.'s Opp'n at 7, 10; see also id. at 10 ("Here Ms. Arnold alleges a series of non-selections that served Ms. Johnson's larger purpose of denying her the [Program Manager] position on a permanent basis.").

In National Railroad Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court rejected the continuing violations theory for discrete retaliatory acts and held that "a Title VII plaintiff raising claims of discrete discriminatory or retaliatory acts must file his charge within" 45 days of the day that the act occurred. Id. at 122. This is so "even when [the discrete discriminatory acts] are related to acts alleged in timely filed charges. Id. at 113. Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire[.]" Id. at 114. The 45-day period begins to run when the employee "knew, or should have known, about the alleged discriminatory action[.]" Stewart v. Ashcroft, 352 F.3d 422, 425 (D.C. Cir. 2003).

Under Morgan, each discrete non-selection for an acting supervisor position must have been timely exhausted even if the

act is related to Arnold's non-selection for the Program Manager
position, which was timely exhausted.  The Secretary provides
evidence that Arnold learned that that someone else had been
appointed for some of the acting supervisor positions by
contemporaneous e-mails.  In an administrative hearing related to
this matter, Arnold testified that she was alerted that others
were appointed to acting supervisor positions after August 2003
by e-mails that were sent to all employees that worked in human
resources.  Pl.'s Opp'n, Ex. 1, Excepts from Hr'g Tr. at 76:6-12.
Arnold now argues that she was unaware "that she had been denied
the opportunity to serve as an acting supervisor until . . . much
later."  Pl.'s Opp'n at 10.  However, Arnold does not cite any
evidence in the record to support her factual assertion and does
not address the Secretary's evidence that she received notice of
her non-selection for each acting supervisor position assigned
after August 2003 by contemporaneous e-mails.  Summary judgment
cannot be avoided by merely alleging that the movant is
incorrect.  See Anderson, 477 U.S. at 259.  Accordingly, the
Secretary is entitled to judgment as a matter of law for Arnold's
claims of retaliatory non-selection for acting supervisor
positions assigned after August 2003[2] because  Arnold failed to

---

[2]  All of Arnold's claimed non-selections except for the
position dated September 6, 2002 occurred after August 2003.

initiate contact with an EEO counselor within 45 days of learning
of her non-selection.[3]

The Secretary is also entitled to summary judgment on
Arnold's claim regarding her non-selection for the acting
supervisor position dated September 6, 2002 because Arnold cannot
establish a prima facie case of retaliation for this claim.  To
establish a prima face case of retaliation, a plaintiff must show
"(1) that [she] engaged in statutorily protected activity;
(2) that [she] suffered a materially adverse action by [her]
employer; and (3) that a causal link connects the two."  Jones v.
Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009).  Arnold claims that
she was retaliated against for filing an EEO complaint in 2003 by
not being selected for an acting supervisor position in 2002.
Because this non-selection pre-dates Arnold's 2003 EEO complaint,
it could not have been retaliation for her filing the 2003
complaint.  See Booth v. District of Columbia, 701 F. Supp. 2d
73, 79 (D.D.C. 2010).  Moreover, Arnold did not respond to the
Secretary's legal argument that Arnold cannot establish a prima

---

[3]  The Secretary also moves for summary judgment for
Arnold's claim that Felder's designation as the Acting Program
Manager in October 2004 was retaliatory, alleging that Arnold
abandoned this claim.  Because Arnold failed to respond to this
argument in her opposition, this argument will be deemed conceded
and judgment will be entered for the defendant regarding Arnold's
claim that designating Felder to the Acting Program Manager
position was retaliatory conduct.  See Iweala v. Operational
Techs. Servs., Inc., 634 F. Supp. 2d 73, 80-81 (D.D.C. 2009)
(deeming conceded the defendant's exhaustion argument in its
motion where the plaintiff failed to respond to it in her
opposition).

facie case of retaliation for her claim regarding her non-

selection for the acting supervisor position dated September 6,

2002 because Arnold cannot establish a causal link between her

protected conduct and not being appointed to the acting

supervisor position.  Accordingly, the Secretary is entitled to

judgment as a matter of law regarding Arnold's claim that her

non-selection for the acting supervisor position dated

September 6, 2002 was retaliatory.

II.  PROGRAM MANAGER POSITION

Arnold alleges that the Secretary failed to promote her to

the Program Manager position in retaliation for her protected

conduct.  Compl. ¶ 15.  The Secretary argues that judgment should

be entered against Arnold because the Secretary had a legitimate,

non-retaliatory reason for not promoting Arnold to the Program

Manager position:  Arnold's "application was screened out prior

to referral of the top candidates to" Renton, the selecting

official, based on Arnold's lower, computer-generated score on

the self-assessment.  Def.'s Mem. at 19.  The Secretary contends

that the self-assessment was "developed based on the position

description which had been prepared prior to Arnold's initial

contact [with an EEO counselor] on August 4, 2003."  Id.  The

Secretary asserts that the assessment gave work experience in

certain programs, such as Arnold's work experience in the Special

Initiatives Group, less weight than the "paramount qualification"

for the position: management knowledge and skills. <u>See</u> Def.'s
Stmt. ¶ 7 (stating that the position description for the Program
Manager "position [did] not require technical competence in a
specialized function area of Human Resources Management, but
rather has a paramount qualification requirement for Management
knowledge and skills" (internal quotation marks omitted)). The
Secretary also argues that screening out Arnold's application
before the top candidates were referred to the interview panel
was non-retaliatory. The Secretary explains that Spencer
"pare[d] down" the list of applicants based on what Spencer
believed to be a "natural break" in the applicants' scores.
Def.'s Mem. at 19 (citing Spencer Decl. ¶¶ 10-11). Arnold
counters that Johnson appointed Renton "to oversee the hiring
process, and orchestrated a selection process replete with
irregularities." Pl.'s Opp'n at 12. First, Arnold challenges
the scoring and argues that there was no "natural break" in the
applicants' scores. <u>Id.</u> at 13. Second, Arnold argues that the
Secretary's neutral reason is implausible because the Secretary
preselected Felder for the Program Manager position and Felder
was not qualified for the position. <u>Id.</u> at 13-14. Finally,
Arnold argues that the Secretary failed to provide sufficient
evidence demonstrating the fairness of the promotion process.
<u>Id.</u> at 14.[4]

_____

[4] Arnold also argues that the Secretary's neutral reason is
pretextual because Johnson developed the self-assessment

Failure to promote an employee as retaliation for engaging in a protected activity violates Title VII. <u>See</u> <u>Taylor v. Solis</u>, 571 F.3d 1313, 1321 (D.C. Cir. 2009); <u>Stewart</u>, 352 F.3d at 427. Once an employer has offered a legitimate, non-retaliatory reason for the non-promotion, a court examines whether the plaintiff has produced sufficient evidence to establish "that the reason asserted by the employer is pretext for retaliation." <u>Holcomb v. Powell</u>, 433 F.3d 889, 901 (D.C. Cir. 2006) (citing <u>Cones v. Shalala</u>, 199 F.3d 512, 520 (D.C. Cir. 2000)).

Arnold argues that the applicant scores were adjusted by adding veterans' preference points[5] before Spencer identified and

---

questions and Renton knew the identities of all of the applicants. These arguments are insufficient to avoid summary judgment because Arnold does not point to any evidence in the record to support her allegations. Moreover, Arnold did not contest the Secretary's assertion that Renton did not know the identities of the applicants when he asked Spencer to pare down the list of applicants. <u>See</u> Def.'s Stmt. ¶¶ 13-14; Pl.'s Opp'n at 5. "As courts are not free to second-guess an employer's business judgment, a plaintiff's mere speculations are insufficient to create a genuine issue of fact regarding an employer's articulated reasons for its decisions and avoid summary judgment." <u>Brown v. Brody</u>, 199 F.3d 446, 458-59 (D.C. Cir. 1999) (internal quotation marks omitted), <u>abrogated in part by</u> <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53 (2006).

    [5] Under 5 U.S.C. §§ 2108, 3309 veterans are given preference in hiring when external competitive hiring procedures are used. There are a number of preference categories, including a "5-point preference" ("TP"), a 10-point 30 percent compensable disability preference ("CPS"), and a 10-point disability preference ("XP"). <u>Veterans Services</u>, Office of Personnel Mgmt., http://www.opm.gov/policy-data-oversight/veterans-services/vet-guide (last visited Sept. 17, 2013). The Quickhire printout showing the applicants' scores for the Program Manager position lists the applicants' preference statutes. <u>See</u> Pl.'s Opp'n, Ex. 2, Romella Arnold Rpt. on Investigation at 201 (designating C.D.

forwarded the best qualified applicants to Renton.  Arnold
alleges that had veterans' preference points not been added, then
there would have been no "natural break" in the applicants'
scores and Arnold's application would have been forwarded to the
interview panel.  Accordingly, Arnold contends that the
"[d]efendant's assertion that there was a natural break at
95 is . . . false."  Pl.'s Opp'n at 13.

This argument does not demonstrate pretext because Arnold
failed to provide evidence showing that adding veterans'
preference points to the applicants' scores was motivated by a
desire to retaliate against Arnold for engaging in protected
conduct.  Moreover, Arnold merely denies without evidentiary
support the Secretary's evidence showing that the scores that
Spencer used to rank the applicants actually did not include
veterans' preference points.  The Secretary offers evidence that
although the printout shows the applicants' preference statuses,
veterans' preference points were not included in the total
scores.  See Def.'s Mot., Ex. 2, Hr'g 1/28/09 Tr. 253:13-254:17
(Spencer testifying that she knew that veterans' preference
points were not included in the scores because the printout shows
scores sorted by "Total Score" and not "Vet+"); Def.'s Reply, Ex.
4, Decl. of Philesa A. Spencer at Ex. S7 (showing scores
specially sorted by "Vet+" and applicants' entitled to receive

_____

as "TP," S.V. as "CPS," and J.C. as "XP").

veterans' preference points with increased scores). By contrast, Arnold merely contends that "[t]he Quickhire printout demonstrates that veterans preference points were included" in the scores. Pl.'s Opp'n at 5. Arnold bases her argument on the fact that the printout shows the applicant's preference status next to his or her name and the unsupported assertion that "[t]he Quickhire system is set up to automatically add[] points to applicants' scores when they indicate that they are entitled to veterans preference." Pl.'s Opp'n at 13. Arnold offers no evidence to support her contention and rebut the Secretary's evidence.

Arnold's argument that the Secretary preselected Felder for the Program Manager position fails because preselection that is "'not on some basis prohibited by Title VII'" "'does not violate Title VII.'" Oliver-Simon v. Nicholson, 384 F. Supp. 2d 298, 310 (D.D.C. 2005) (quoting Goostree v. Tennessee, 796 F.2d 854, 861 (6th Cir. 1986)). "Although pre-selection sheds light on an employer's motivation for a hiring decision, where there is no evidence that pre-selection is based on a motive prohibited by Title VII . . . , the conduct is not actionable." Id.[6]

---

[6]  Similarly, Arnold's assertion that Brown and not Felder was "the clear best qualified candidate for the position[,]" Pl.'s Opp'n at 12, without any accompanying evidence that Felder was preselected to retaliate against Arnold, is insufficient to show pretext.

Arnold's assertion that Felder was not qualified for the Program Manager position, Pl.'s Opp'n at 13, also fails to establish pretext. The Program Manager position vacancy announcement states that applicants for the Program Manager position "must have one (1) year of specialized experience at or equivalent to at least the next lower grade." Arnold ROI at 184-1. The Secretary asserts that "[s]pecialized experience is experience which is in or directly related to the work and which has equipped the applicant with the specific knowledge, skills, and abilities to successfully perform the duties of the position to be filled." Id. Using this definition, the Secretary argues that Felder was qualified for the Program Manager position because Felder's application shows that Felder had over a year of specialized experience in GS-13 and GS-14 positions, including 6-7 months of experience in the Special Initiatives Group when she served as the Acting Program Manager. Def.'s Stmt. ¶¶ 21-24. Arnold counters that Felder was not qualified for the position because Felder did not have over a year of specialized experience in the programs and initiatives for which the Program Manager is primarily responsible.[7] Put simply, Arnold argues that the

_____

[7] The vacancy announcement (WO Merit 2005-0135) states: Primary responsibilities cover the following programs and initiatives: Historically Black Colleges and Universities; Hispanic Serving Colleges; Tribal Colleges and Universities; Asian American/Pacific Islander Initiative; Students with Disabilities Initiatives; Faculty Exchange Program; Executive Orders; Educational Partnerships; Diversity

Secretary's legitimate non-retaliatory reason for not promoting Arnold was pretextual because the Secretary applied a broader definition of "specialized experience" than Arnold would have liked. However, "[a]bsent some evidence that the defendant does not 'honestly believe in the reasons it offers,' the Court 'will not second-guess how the defendant weighed particular factors in the promotion decision[.]'" <u>Robinson v. Paulson</u>, 591 F. Supp. 2d 78, 91 (D.D.C. 2008) (quoting <u>George v. Leavitt</u>, 407 F.3d 405, 415 (D.C. Cir. 2005); <u>Jackson v. Gonzales</u>, 496 F.3d 703, 709 (D.C. Cir. 2007)). Here, Arnold does not provide any evidence that the Secretary did not believe that "specialized experience" included experience in programs and initiatives other than those which are the primary responsibility of the Program Manager. Thus, without evidence that the Secretary does not believe that Felder was qualified for the Program Manager position, concluding that Arnold has raised a genuine issue of material fact would require "contraven[tion] with the principle that courts defer to the employer's decision of what nondiscriminatory qualities it will seek in filling a position." <u>Jackson</u>, 496 F.3d at 715

---

Initiatives; Diversity Intern Program; Students Educational Employment Program; Student Temporary Employment Program (STEP); Student Career Experience Program (SCEP). Advising, counseling and assisting human resources specialists in delivering the highest quality and efficiency of human resources services possible.
Arnold ROI at 184-1.

(internal quotation marks omitted) (citing <u>Stewart</u>, 352 F.3d at 429).

Finally, Arnold asserts that the Secretary did not provide sufficient evidence for a court to determine whether the Program Manager selection process was fairly administered, Pl.'s Opp'n at 14,[8] and the Secretary's failure to do so raises an inference of discrimination, <u>id.</u> at 12.[9] However, once the Secretary offers a

───────────────

[8] Arnold asserts that

To determine if the process was fair or that there was a "fairly administered selection process[,]" at a minimum, the Agency must indicate who determined that this program would be used and whether it is consistently used in filling GS-14 program manager positions, who developed the questions that were asked, and who and how was it decided the weight to be given to each question and response, and provide an explanation how the applicants received the scores they received.

Pl.'s Opp'n at 14.

[9] Arnold bases her argument that federal agencies are required to show that they provided a fairly administered selection process and that failing to do so raises an inference of discrimination, Pl.'s Opp'n at 12, on <u>Salazar v. Washington Metropolitan Transit Authority</u>, 401 F.3d 504 (D.C. Cir. 2006). However, <u>Salazar</u> does not stand for this proposition. In that case, Salazar brought suit against the Washington Metropolitan Transit Authority ("WMATA") alleging, in part, that it had discriminated against him by not promoting him because of his national origin. <u>Salazar</u>, 401 F.3d at 505. WMATA claimed that "it did not promote Salazar because more qualified candidates were selected for the position through a fairly administered selection process." <u>Id.</u> at 508 (internal quotation marks omitted). As such, the question before the court was

whether a reasonable jury could find in Salazar's favor based on all the evidence, including "(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of

legitimate non-retaliatory reason for not promoting Arnold,

Arnold bears the burden of offering evidence sufficient for a

reasonable jury to find that the Secretary's asserted non-

retaliatory reason was pretext.  See Iweala v. Operational Techs.

Servs., Inc., 634 F. Supp. 2d 73, 81 (D.D.C. 2009) (citing Brady

v. Office of the Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir.

2008)).  However, Arnold provides no evidence that shows that the

selection process was unfair.  Because the Secretary has met his

burden in offering a legitimate non-retaliatory reason for not

promoting Arnold, and Arnold has not shown that his reason was

pretext, the Secretary does not have a further obligation to

provide additional evidence of the fairness of the promotion

process as Arnold asserts.  See Holcomb, 433 F.3d at 901.

### CONCLUSION

Arnold did not exhaust her administrative remedies for her

claims that the Secretary retaliated against her by failing to

select her for acting supervisor positions assigned in 2003 to

2005.  Arnold failed to establish a prima facie case of

---

discriminatory statements or attitudes on the part of
the employer)."
Id. (quoting Waterhouse v. District of Columbia, 298 F.3d 989,
992-93 (D.C. Cir. 2002)).  The court found that Salazar had
offered sufficient evidence from which a reasonable jury could
"conclude that WMATA failed to provide a 'fairly administered
selection process' and that its claim to the contrary is
pretextual."  Id. at 509.  Thus, Salazar establishes only that
where an employer asserts that its non-selection of an employee
occurred through a fairly administered process, an employee's
evidence that the process was not fairly administered could raise
an inference of discrimination.

retaliation for her claim that she was not selected for an acting supervisor position dated September 6, 2002 as retaliation for her protected 2003 conduct.  Arnold has raised no genuine material issue to rebut the Secretary's legitimate, non-retaliatory reason for not promoting Arnold.  Arnold conceded the Secretary's arguments that Arnold was not better qualified for the Program Manager position than was Felder and that Felder's designation as the Acting Program Manager in October 2004 was not retaliatory.  The Secretary is entitled to judgment as a matter of law, and judgment will be entered for the Secretary.  A final Order accompanies this Memorandum Opinion.

SIGNED this 19th day of September, 2013.


_____/s/_____
RICHARD W. ROBERTS
Chief Judge